GULF, COLORADO AND SANTA FE RAILWAY CO. v. LEE KNOTT.

Delivered June 3, 1896.

**1. Master and Servant—Apparent Danger to Employe.**

Where a servant, through the negligence of the master, is placed in a position of serious apparent danger, and in an effort to save himself therefrom is injured, the master will be liable, regardless of whether the servant acted as might have been expected from an ordinarily prudent person under like circumstances.

**2. Same—Negligence of Master Must be Shown.**

An employe of a railway company, while assisting in clearing away a wreck, was ordered to climb upon a car which was being raised, and while he was on the car, it appearing that the supports under one side of the car were giving way, and that it was about to turn over, he jumped to save himself and was injured. The danger, however, was only apparent, and not real, as the car did not fall. Held, that as there was no danger, actual or apparent, at the time the employe was ordered to go upon the car, and as no negligence on the part of the company in placing the supports under the car was alleged, the company could not be held liable for the injury.

**3. Same—Pleading—Allegation of Cause of Injury—Proof Different— Charge.**

Where plaintiff's petition, in an action by an employe for personal injuries, alleged that the wrecked car on which he stood was caused to careen (resulting in his injury), by reason of defective jack screws under it, and there was no proof that the jacks were defective, but the evidence was that the careening resulted from the jacks be-

ing improperly placed under the cars, which was not alleged in plaintiff's petition, it was error for the court to charge as to the jacks being defective, and that plaintiff could recover if they were improperly placed under the car.

**4.   Statute of One Year's Limitation—Cost Bond—Issuance of Citation.**

Where plaintiff's petition in an action for personal injuries is filed within one year from the date of the injury, the action will not be barred because plaintiff is unable to give the cost bond required and to procure the issuance of citation before the year has expired, and afterwards makes a pauper's affidavit in lieu of such bond.

**5.   Cost Bond—Parties—Contingent Fee.**

Where an action for damages is prosecuted by an attorney on a contingent fee for a part of the judgment to be recovered, the attorney cannot be required to furnish security for costs, although plaintiff is unable to do so.

APPEAL from Collin.   Tried below before Hon. J. E. DILLARD.

*J. W. Terry* and *Chas. K. Lee,* for appellant.—1.   An employe who undertakes to do work or perform a duty under dangerous conditions, when the danger is open and patent, and is known to him, or can be known to him by the use of reasonable care, assumes the risk of injury therefrom.   McGrath v. Railway, 60 Fed. Rep., 555; Railway v. Schwabbe, 1 Texas Civ. App., 573; Watson v. Railway, 58 Texas, 434; Railway v. Conroy, 83 Texas, 214; Railway v. Brentford, 79 Texas, 619; Rogers v. Railway, 76 Texas, 502; Railway v. Somers, 71 Texas, 700; Railway v. Bradford, 66 Texas, 732; Railway v. Drew, 59 Texas, 10; Railway v. Myers, 55 Texas, 111; Railway v. Fowler, 56 Texas, 452; Railway v. O'Hare, 64 Texas, 600; Railway v. McCarthy, 64 Texas, 634; Anglin v. Railway, 60 Fed. Rep., 553.

2.   It is not negligence in itself to employ a minor employe at any character of work, provided he have sufficient intelligence to appreciate the danger and protect himself against the same, and if he has such intelligence he stands in exactly the same attitude to his employer as would an adult employe.   Railway v. Jones, 76 Texas, 350; Railway v. Miller, 51 Texas, 271; Railway v. Crowder, 61 Texas, 263; Railway v. Carlton, 60 Texas, 397; O'Keefe v. Thom, 16 Atl. Rep., 737; Civiack v. Merchants' Woolen Co., 15 N. E. Rep., 579; Railway v. Sims, 80 Ga., 807.

3.   Where a material issue is not covered by the charge of the court and a special charge is asked, properly submitting the same to the jury, and it is refused, the cause will be reversed.   Willis v. Smith, 72 Texas, 565; Railway v. Nixon, 52 Texas, 19; Earle v. Thomas, 14 Texas, 583.

4.   The evidence should be confined to those acts of negligence which are shown to have contributed to the injury, and only such acts should be submitted for the consideration of the jury.   There was no evidence whatever to show that the absence of oil in the pump jack, or the defective condition, if any, of the pump jack had anything whatever to do with the plaintiff's accident.   Railway v. Hennessy, 75 Texas, 155; McCain v. Railway, 18 S. W. Rep., 537; Mining Co. v. Wilson, 28 Pac. Rep., 178; Knahtla v. Railway, 27 Pac. Rep., 91.

5.    When parties wait until the last moment to file their suit and then fail to see that citation is issued thereon within a reasonable time, and permit several months to elapse between the filing of suit and the issuance of citation, such filing of suit will not be sufficient to arrest statute of limitations.    There is no sufficient institution of suit to arrest statute of limitations until parties have done all that is necessary to be done to put the law in motion.    The statute providing that the clerk shall not be bound to issue citation until proper security for costs or affidavit in lieu thereof is filed with the clerk, until such affidavit or security is given, there is no sufficient institution of the suit to arrest limitation.    Ricker v. Shoemaker, 81 Texas, 22; Maddock v. Humphries, 30 Texas, 494; Bates v. Smith, 80 Texas, 243; Veramendi v. Hutchins, 41 Texas, 531; Huffman v. Cage, 31 Texas, 595; Insurance Co. v. Templeton, 3. Willson C. C., 424.

6.    All persons directly interested in the subject matter of litigation, having an interest in the judgment, if any, to be recovered, and for whose use and benefit the suit is being prosecuted, are parties, and may be required to give a cost bond.    Voorhees v. McCartney, 51 N. Y., 387; Bliss v. Otis, 1 Denio, 656; Giles v. Halbert, 12 N. Y., 32; Article on Costs, 4 Am. & Eng. Ency. of Law, 319.

[No brief for appellee reached the Reporter.]

NEILL, Associate Justice.—The appellee, plaintiff below, instituted this suit in the District Court of Collin County, to recover of appellant damages for injuries alleged to have been sustained about the 30th day of June, 1890, plaintiff alleging in substance as follows:    That about the — day of May, 1890, he, then a minor, under 21 years of age, was employed by defendant's section boss to work as a section-hand, and at the time he was inexperienced and ignorant of the several risks and grievances incident to raising and replacing wrecked cars on the track, and that the same had not been explained to him by the section boss or any other person, and that he was so ignorant on the date of his injuries, and neither by nature and intelligence nor experience was he able to or did comprehend such dangers, and the same had not been explained to him.    That one Webb was section foreman of the section, and supervising the construction and repair of the road, and had supervision and control over the same, with power to employ and discharge hands; that Webb, knowing of plaintiff's minority, employed him as a section hand without explaining the risks incident to raising wrecked cars; that one Squires was foreman of a wrecked crew operating on defendant's road in charge of a distinct and different branch of service, having charge and supervision of all hands employed at and about wrecked cars; that about June 30, 1890, a wreck occurred on the defendant's road, and Webb ordered Knott and his fellow section hands to assist in raising the wrecked cars; that to enable them to raise the wrecked cars, the defendant furnished jack screws, which are not ordinarily used for

such purposes and which was unknown to plaintiff; that it also furnished a derrick, block and tackle, operated and managed by a locomotive of defendant; that such jack screws were defective and out of repair, were worn and weak and would not hold, and the hydraulic jacks were not supplied with oil, were weak and out of repair, and were placed in the hands of a man who did not understand how to operate them; that plaintiff was ignorant of the defect and that the party in charge of the same did not know how to use it; that the said jacks were carelessly placed under one end of the wrecked car by and under the supervision of Webb and Squires, and by means of said jack screws, so defective, and by means of the block and tackle, one end of the car was raised; that Webb directed plaintiff to climb on said car to assist in loosening the ropes then supporting the car, also, to cast off ropes on said car; that plaintiff attempted to obey the orders and climbed on the car; that this was dangerous, and known to Webb to be so; that plaintiff, by reason of his inexperience, was ignorant of the same; that when plaintiff was on said car, said Squires, in order to get another hitch on the car, caused and directed the engine to slack up, and thereby permitted said car to careen and turn; that Squires well knew that this would cause the car to turn; that when the car turned, the defective screws were unable to sustain the car, and the same turned partly over, and that the negligent slackening of the derrick caused the car to careen, and that said slackening was negligent; and that plaintiff was placed in a position of apparent danger, where he was forced to exercise his discretion whether to remain on the car and be crushed by the car rolling over him, or jump from the same; and that said Webb directed him to jump; and that it was necessary for him to jump in the exercise of sound discretion, to save his life, whereby plaintiff was injured, to his damage $12,000, etc.

Defendant answered by general and special exceptions, general denial, plea of contributory negligence, and that plaintiff's injuries, if any, were the result of dangers incident to his employment, which he had contracted to assume, and dangers which he knew or ought to have known by the exercise of ordinary care.

As a number of the assignments of error are aimed at the court's charge, and others complain of the refusal of special instructions asked by appellant to cure its defects, we will, for the purpose of having the points raised by such asignments, and having what we shall say in our consideration of them clearly understood, insert here so much of the charge as may subserve that purpose.

"The jury are instructed that it is the duty of employers to furnish their employes with reasonably safe machinery and implements, when required for use by the employe in the line of his duty. The jury are further instructed that it is the duty of employers to use reasonable precaution to prevent their employes and servants from receiving injury while pursuing their labors. The jury are further instructed that it is the duty of an employer, and his servants and agents acting for him, to refrain from placing an inexperienced employe or laborer in

a dangerous service without first warning and instructing such employe of the dangers incident to such service. A fellow servant is another servant or person engaged in the same kind of service, under the same principal or director. A person employed by another to perform any service, with power to employ other persons and to direct them in the performance of their labors, with power to discharge such persons, in law, is regarded as the agent of his principal, and his words and acts, within the scope of his duties, are binding upon the principal, and a person employed and acting under such an agent does not occupy the relation of fellow servant to such agent. The principal is not responsible in damages for an injury resulting from the act of a fellow servant. The principal is responsible, however, in damages for any personal injury to his employe resulting from the negligent acts or conduct of his agent, under whose direction and supervision such employe is laboring at the time. It is the duty of the laborer or employe to exercise reasonable and proper care and caution while engaged in the service of his master or employer, to prevent injury to his own person. Reasonable and proper care, as used in this charge, means such reasonable caution and prudence as any person of average caution and prudence would exercise under similar circumstances. Negligence, as used in this charge, means any failure to discharge any duty or obligation to another required by law. Contributory negligence is any negligence upon the part of the person injured, which contributed directly or proximately to the accident."

"The jury are charged, if they believe from the evidence before them, that in May, 1890, plaintiff was a minor, and that he was employed to work on defendant's road by one J. E. Webb, who was then acting as defendant's section boss on a certain section of defendant's road, and that said Webb had power to employ hands to work upon said section and to direct them in their labors and to discharge them, and that on or about the 30th June, 1890, the plaintiff went with other hands to assist in removing a wreck upon defendant's road, and that at that time plaintiff was inexperienced in removing wrecks upon the road, and that the business of removing wrecks is a dangerous business, and that said Webb had failed to instruct or to inform plaintiff of the danger attendant upon such business, and that one Wm. Squires was at said wreck with defendant's wrecking train and had control over the hands sent to assist in removing said wreck, and that plaintiff was ordered to go upon top of a caboose car which was partially raised and was supported at one end upon trucks and at the other by pump jacks, and that he was ordered to go on said car either by said Squires or said J. E. Webb, and that plaintiff went on top of said car in obedience to said command, and that after plaintiff had got on top of said car, that said car was caused to drop or fall a short distance, and to careen over through the negligence of said Squires in slackening the rope around said car, or by failure of defendant's servants to properly place said pump jacks under said car under the direction of Squires, or said Webb,

or by both those causes combined, and that about the time said car careened over (if it did), that said J. E. Webb ordered plaintiff to jump off said car, or that plaintiff had just reason to believe that he was about to be turned over while on said car, and to escape greater danger or through fright he attempted to jump from said car, and that plaintiff in attempting to jump from said car fell to the ground and received any or all the injuries complained of by plaintiff in his petition, then plaintiff would be entitled to recover reasonable damages for such injuries as the proof shows he has sustained."

"The jury are further charged, if they believe from the evidence before them that plaintiff fell from the top of defendant's car, but if they further believe that plaintiff did not receive any permanent injury from said fall, then they should find for defendant. The jury are further charged, if they believe from the evidence that at the time of the occurrence of the accident, if any such occurred, that defendant's agents and principals, Webb and Squires, were not guilty of any negligence, and that defendant, through fright, or without any just cause to become alarmed, jumped from said train and sustained said injuries complained of, then the jury should find for defendant. The jury are further charged, if they believe that the defendant's agents, Webb and Squires, were guilty of the negligent acts complained of by plaintiff, at the time of the accident, and if they further believe from the evidence that plaintiff was guilty of contributory negligence in attempting to jump from said car without any just cause for alarm, then they should find for the defendant. The jury are further charged and instructed to disregard the defendant's plea of the statute of limitations."

To entitle the appellee to recover he must have been placed in a position of apparent danger by one or more of the alleged negligent acts of the appellant, and injured by an effort to avert his seeming peril. His obvious hazardous position must not have been such as the risk of which he assumed as an incident to his employment, but must have been such as resulted proximately from some negligent act which he has alleged of his employer.

It is said by Mr. Justice Brown, in Railway Co. v. Neff, 87 Texas, 309: "The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life or serious injury to his person, whether that person be prudent or imprudent, if in an effort to save his life he makes a choice of means from which injury results, and notwithstanding it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether." Under this rule it is not required that the act of the party which results in his own injury should be such as might have been expected from an ordinarily prudent person under like circumstances. Such qualification, by the opinion in the case referred to, is deemed to be useless, if not calculated to confuse the jury, when expressed in a charge; and it may now, in this State, be consid-

ered eliminated from the rule which before obtained in cases of this character. Therefore, under the law as it now stands, and as it was when this case was tried, the trial court properly refused the special charge asked by appellant's counsel embodying the qualification expurgated from the law as it stood aforetime. Nor is the error in the charge, wherein the jury are directed to find for the defendant if they believe from the evidence that plaintiff was guilty of contributory negligence in attempting to jump from the car without just cause of alarm, such as the appellant can complain of. For, however viewed, it was an error in his favor.

While the appellee charged appellant with a number of negligent acts, he only ascribed the careening of the car, which caused his alarm and impelled him to jump, to two of them; which are (1) Squires directing the engine to slack up, knowing that it would cause the car to turn; and (2), defective jackscrews, which were unable to sustain the car. The evidence shows without controversy that the jackscrews, even if defective, in no way caused or contributed to the threatened danger; but that it was caused either by the way the jackscrews were placed under the end of the car, or by the "slacking up" of the wrecking engine—the great preponderance of the evidence being that it was caused by the former. From this it follows that the court erred in submitting to the jury the question as to whether the car was caused to careen by the failure of appellant's servants to properly place the jackscrews, and in instructing them they might find for appellee if the careening was caused from such failure of appellant's servants, and the appellee, through fright, jumped from the car to save himself from the apprehended danger. This not being one of the alleged negligent acts to which the turning of the car was attributed, the proof of it, in the absence of the necessary allegation, did not authorize the instruction. Besides, the mere fact that the wrecking crew were working under the direction of Squires and Webb would not impose upon the appellant a liability for the negligent act of appellee's fellow-servants, unless such negligent act was done under the direction of such vice-principals of the railroad company. It was not shown that either Webb or Squires directed the jackscrews to be placed as they were under the car, or that they were negligently placed. The fact that the timber supporting the jack gave way and caused it to lean is not of itself sufficient to show negligence on the part of appellant's servants; and if it were, it would be an act of appellee's fellow-servant for which appellant would not be liable unless it was directed to be done in the manner it was by those in control of the actions of the wrecking crew. Employes of a railroad company engaged in removing a wrecked train necessarily work under the direction and supervision of a foreman, but while so employed, it is impracticable, if not impossible, for him to direct and supervise every act of each of the various servants and see that it is so skillfully performed that one of the employes, afterwards, in the performance of some other duty, in furtherance of the work, will not, in consequence

of it, suffer injury.   Hence, to make the employe responsible to his employer for the negligent act of his fellow-servant, the negligent act must have been performed as directed by the master; and, thus, in effect, become the act of the master himself.

It is demonstrated by the evidence in this case that appellee's danger was not real, but only apparent, and that its appearance, which he sought to avoid by jumping, did not exist when he went upon the car in obedience to the order of his superior to perform a service not in itself dangerous, actually or apparently, but occurred after he got on top of the car.   If, then, this appearance of danger was not caused by appellant's negligence, it is difficult to perceive how he can recover in this action.   It cannot be said that he was placed in a position of danger incident to his employment which he cannot be charged with having assumed, by reason of his minority or inexperience, because he was not in any danger at all.   If he was sent into a place of apparent danger, it cannot be said his minority and inexperience would not excuse him from going into it, for in that event the danger would have been apparent to him, and, as we have said, the apparent danger which caused him to act was not obvious when he went on the car.   What then, has appellee's being employed while a minor and ignorant of the danger incident to his employment got to do with this case, unless he was placed in a position of apparent danger by the negligence of appellant?   In that event it may be material; for what might appear dangerous to one of tender years and inexperience might present a different aspect to one of age and experience.   In any other event, we cannot perceive its materiality.

According to appellee's own testimony he did not jump from the car because he was told to by Webb, but because he apprehended it would turn over and crush him.   So, it seems, he would have endeavored to escape the apparent danger whether warned to do so or not, and that the warning did not impel his action.   However, we are yet to see a case holding that a servant can recover damages from his employer for injuries caused by his acting upon the cries of apparent danger to others which were not obvious to himself.

There was no error in the court's refusing to give appellant's special charge to find in its favor on the plea of limitations.   The action was brought within one year after the alleged injury occurred, and the appellee's inability to give a cost bond or file an affidavit in lieu thereof before twelve months elapsed from the accrual of his cause of action, did not keep the statute running after his petition was filed until he made the affidavit and procured the issuance of citation.   He wished and endeavored to make the bond, and the interest of the officers of the court, as well as of appellant demand that he should have a reasonable time to give the bond before filing a pauper's affidavit.   Nor do we think that an attorney who prosecutes a cause for damages upon a contingent fee of a part of the judgment to be recovered can be required to give security for costs.   Only parties to a suit can be required to give such bond, and

such an attorney is in no sense a party to the action. Railway v. Scott, 28 S. W. Rep., 457.

Such other errors as are assigned will not probably arise on another trial, and it is unnecessary for us to consider them.

Because of the errors indicated in the charge, and the manifest insufficiency of the evidence to support the verdict, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*